UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN BELDING,

    Plaintiff,                                    Hon. Gordon J. Quist

v.                                                 Case No. 1:13-CV-855

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on his alleged disability onset date. (Tr. 132). He possesses a ninth grade education and has previous work experience as a press operator and assembler. (Tr. 21, 32). Plaintiff applied for benefits on October 14, 2009, alleging that he had been disabled since October 17, 2009, due to arthritis in his back and shoulder, as well as "pauzee syndrome." (Tr. 132-38, 160). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 49-131). On January 12, 2012, Plaintiff appeared before ALJ Kathleen Eiler with testimony being offered by Plaintiff and a vocational expert. (Tr. 27-48). In a written decision dated February 10, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 12-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2009. (Tr. 14). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On October 31, 2002, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "degenerative disc changes at L5-S1," but "no disc protrusion, canal stenosis, or neural compression." (Tr. 225).

On September 10, 2004, Plaintiff was examined by Dr. Lisa Pullum. (Tr. 230). Plaintiff reported that he was experiencing back pain. (Tr. 230). Plaintiff reported that he was presently working "approximately 55 to 56 hours six days a week" and that "his job involved a lot of bending, reaching, lifting objects and occasionally has to lift heavy objects." (Tr. 230). Plaintiff reported that he benefitted from taking Skelaxin in the past, "but is no longer taking it and he is not sure why." (Tr. 230). Plaintiff was again prescribed Skelaxin and on December 10, 2004, he reported that his back pain rated 4 out of 10. (Tr. 229-30).

On January 12, 2006, Plaintiff reported that "the medications have been very beneficial in allowing him to do his activities of daily living that he enjoys doing." (Tr. 227). Plaintiff reported that when taking his medication "his pain level stays within a 3 out of 10." (Tr. 227). Plaintiff also reported that "he is able to walk on a daily basis, approximately one mile at a time which does actually help his pain." (Tr. 227).

On September 6, 2007, Plaintiff was examined by Dr. Pullum. (Tr. 276). Plaintiff reported that he was experiencing pain in his lower back and legs. (Tr. 276). A physical examination revealed the following:

> He is alert and oriented. His blood pressure 149/112, pulse 76, respirations 20. His lower extremity strength is strong and equal. Plantar flexion and dorsiflexion are strong and equal. He has a negative seated straight leg raise, positive pedal pulses, no pedal edema. Skin is intact. Sensation is intact. His gait is normal.

(Tr. 276).

On March 5, 2008, Plaintiff was examined by Dr. Pullum. (Tr. 274). Plaintiff reported that he was experiencing lower back and leg pain. (Tr. 274). A physical examination revealed the following:

> On physical examination he is alert and oriented. His blood pressure is 159/112, pulse 100, respirations 22. His lower extremity strength is strong and equal. Plantar flexion and dorsiflexion are strong and equal. He has no edema noted in his lower extremities. Skin is intact. Sensation is intact. His gait is normal. He is complaining of a headache which he states he has had before when he forgets to change his patches and at this time does not request anything to help treat his headache. I did explain to him that if his headaches continues that he should follow-up with his primary care physician.

(Tr. 274).

On November 19, 2008, Plaintiff was examined by Dr. Pullum. (Tr. 268). Plaintiff complained that he was experiencing lower back and leg pain. (Tr. 268). A physical examination revealed the following:

> On physical exam the patient is alert and oriented. Blood pressure is 150/111. Pulse 58. Respirations 20. His lower extremity strength is strong and equal. Plantarflexion and dorsiflexion are strong and equal. He has a negative seated straight-leg raise. Good pedal pulses; trace pedal edema.

(Tr. 268).

On June 17, 2009, Plaintiff was examined by Dr. Pullum. (Tr. 264). Plaintiff reported that he was experiencing low back and leg pain. (Tr. 264). A physical examination revealed the following:

> On physical exam, he is alert and oriented. His blood pressure is 151/97, pulse 91, and respirations 20. His lower extremity strength is strong and equal. Plantarflexion and dorsiflexion are strong and equal. He has a negative seated straight leg raise bilaterally, positive pedal pulses, no pedal edema. Skin is intact. Sensation is intact. His gait is normal.

(Tr. 264).

On August 13, 2009, Barbara Rounds, an occupational therapist, completed an evaluation of Plaintiff's residual functional capacity. (Tr. 239-45). Rounds reported that Plaintiff can frequently sit and can occasionally stand or walk. (Tr. 240). She reported that Plaintiff can occasionally lift 15 pounds, carry 10 pounds, and push/pull 30 pounds. (Tr. 240). Rounds concluded that Plaintiff was capable of performing sedentary work with a sit stand option, but "does not appear capable of engaging in full time, sustained employment." (Tr. 241).

On May 5, 2010, Plaintiff was examined by Dr. Pullum. (Tr. 257-58). Plaintiff reported that he was experiencing lower back pain. (Tr. 257). A physical examination revealed the following:

> On physical exam, he is alert and oriented. His blood pressure is 139/102, pulse 88, and respirations 20. He has +2 reflexes in his patella and plantar deep tendons. His lower extremity strength is strong and equal. Plantarflexion and dorsiflexion are strong and equal. He has no swelling noted in his lower legs. He has positive pedal pulses. His gait is normal, no complaints of decreased sensation in his lower extremities.

(Tr. 257).

On September 8, 2010, Plaintiff was examined by Dr. Pullum. (Tr. 279-80). Plaintiff reported that he was experiencing lower back pain which radiated into his lower extremities. (Tr. 279). A physical examination revealed the following:

> On physical exam, he is alert and oriented. Blood pressure is 149/106, pulse 90, and respirations 20. His lower extremity strength is strong and equal. Plantarflexion and dorsiflexion are strong and equal. No edema is noted in his lower extremities. His gait is normal. Skin in intact. Sensation is intact. No skin discoloration is noted. He is morbidly obese.

(Tr. 279).

On November 7, 2010, Plaintiff participated in an MRI examination of his right shoulder the results of which revealed:

> AC joint alignment is normal. The acromion has type II morphology. Moderate inferior osteophyte is seen of the acromion and distal clavicle. This encroaches upon the musculotendinous junction of the supraspinatus. The rotator cuff demonstrates some intermediate signal changes, without evidence of full-thickness tear. Findings are consistent with chronic impingement and tendinopathy.
>
> Glenohumeral joint alignment is normal. There is no joint effusion. Small amount of fluid is seen in the subacromial subdeltoid bursa. In the absence of a rotator cuff tear, this is most likely indicative of bursitis. Biceps tendon is grossly normal. Visualization of the glenoid labrum is somewhat limited but there is no gross evidence of labral tear.
>
> Cystic change is seen in the humeral head near the rotator cuff attachment. There is no bone marrow edema, bone contusion, or fracture. There is no bony or soft tissue mass. There is no evidence of muscle tear.

(Tr. 281-82).

On March 10, 2011, Plaintiff was examined by Dr. Pullum. (Tr. 285-86). Plaintiff reported that he was experiencing lower back pain which radiated into his lower extremities. A physical examination revealed the following:

> On physical exam, he is alert and oriented. His blood pressure is 132/94, pulse 98, and respirations 18. His lower extremity strength is strong and equal. Plantarflexion and dorsiflexion are strong and equal, negative straight leg raise. No discoloration is noted in his lower extremities. His gait is normal. He is morbidly obese.

(Tr. 285).

On May 23, 2012, Plaintiff was examined by Dr. Pullum. (Tr. 327-28). Plaintiff reported that he was experiencing low back and leg pain. (Tr. 327). A physical examination revealed the following:

> On physical exam, he is alert and oriented. His blood pressure is 141/100, pulse 100, respirations 20. His lower extremity strength is strong and equal. Plantar flexion and dorsiflexion are strong and equal. He has no edema noted in his lower extremities, positive pedal pulses. Skin in intact. Sensation is intact. His gait is normal.

(Tr. 327).

At the administrative hearing, Plaintiff testified that he was unable to work due to "arthritis" in his back and right shoulder. (Tr. 33). Plaintiff reported that he experiences difficulty walking and being on his feet. (Tr. 34-35). Specifically, Plaintiff reported that he is "really wobbly" on his feet and is unable to perform activities such as shopping. (Tr. 35). Plaintiff reported that he can walk only "about a half a block." (Tr. 36). Plaintiff reported that he "can't lift hardly anything anymore." (Tr. 36). Specifically, Plaintiff reported that he can lift a gallon of milk if he uses "both hands." (Tr. 36). Plaintiff reported that he is unable to drive an automobile because his legs and feet "are numb." (Tr. 37). Plaintiff reported that he is unable to mow his lawn with a riding lawn mower because he "can't lift [his] legs up enough to get on it or anything." (Tr. 38).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine; (2) diabetes mellitus; (3) right shoulder impingement; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-17). The ALJ next determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he requires a sit-stand option at will so long as he is not off task for more than ten percent of the workday; (2) he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; (3) he can occasionally balance, stoop, crouch, kneel, and crawl; (4) he must avoid concentrated exposure to workplace hazards, humidity, and temperature extremes; (5) he must avoid uneven terrain when ambulating; and (6) he can occasionally push/pull with his right upper extremity, but he can never reach overhead with his right upper extremity. (Tr. 17-18).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 4,900 jobs in the state of Michigan, and approximately 160,000 nationally, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 44-46). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.	**The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence**

As noted above, occupational therapist Barbara Rounds completed an evaluation of Plaintiff's residual functional capacity. Rounds reported that Plaintiff can frequently sit and can occasionally stand or walk. She reported that Plaintiff can occasionally lift 15 pounds, carry 10 pounds, and push/pull 30 pounds. Rounds concluded that Plaintiff was capable of performing sedentary work with a sit stand option, but "does not appear capable of engaging in full time, sustained employment." When asked to assess Plaintiff's residual functional capacity, Dr. Pullum declined to articulate her own assessment of such, but instead simply adopted the assessment performed by Barbara Rounds. Plaintiff asserts that the ALJ erred by failing to afford sufficient weight to Dr. Pullum's assessment of his residual functional capacity. Plaintiff asserts that because Dr. Pullum was his treating physician, the ALJ was required to afford controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v.*

*Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to Dr. Pullum's "opinion" and the weight afforded thereto, the ALJ observed as follows:

> Ms. Rounds, the registered occupational therapist, opined that the claimant was able to perform sedentary work with a sit/stand/walk option. She also opined that the claimant is unable [to] engage in full-time sustained employment. Pursuant to Social Security regulations and rulings, the undersigned notes that an occupational therapist is not an acceptable medical source. In addition, Ms. Rounds findings are not consistent with the claimant's longitudinal treatment history, which shows generally unremarkable physical examination findings. The undersigned assigns limited weight to Ms. Rounds' opinion.
>
> Lisa Pull[um], D.O., the claimant's treating pain physician, completed a medical source statement on behalf of the claimant.

13

> However, Dr. Pullman adopted Ms. Rounds' findings as the basis of her opinion and offered no opinion of her own. As noted above, Ms. Rounds' findings are not consistent with Dr. Pullman's own treatment record. The undersigned assigns limited weight to Dr. Pullman's opinion.

(Tr. 20).

First, as the ALJ correctly observed, Dr. Pullum did not offer her own opinion regarding Plaintiff's functional capacity. Thus, there arguably exists no treating physician opinion to which the aforementioned standard even applies. Moreover, even if Dr. Pullum's adoption of Barbara Rounds' assessment is characterized as Dr. Pullum's "opinion," as the ALJ accurately concluded such is contradicted by the doctor's contemporaneous treatment notes which, as described above, are inconsistent with the conclusion that Plaintiff is limited to an extent greater than that recognized by the ALJ. In sum, substantial evidence supports the ALJ's decision to discount Dr. Pullum's opinion.

### II. The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence

At the administrative hearing, Plaintiff testified that he was impaired to a far greater degree than the ALJ recognized and was, therefore, simply unable to work. The ALJ accorded limited weight to Plaintiff's allegations on the ground that Plaintiff was "less than fully credible." (Tr. 20). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29,

2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d

15

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

>With respect to Plaintiff's credibility, the ALJ observed as follows:

>Overall, the undersigned finds the claimant's allegations of disability less than fully credible. The objective medical evidence does not show findings consistent with the claimant's allegations of severe, constant pain that prevents him from performing all work activity. Physical examination findings have been generally unremarkable and the claimant's medical providers chose a conservative course of treatment by maintaining the claimant on pain medications to manage his pain. As noted above, the claimant has obesity and his medical providers have insisted that the claimant lose weight to help alleviate his pain symptoms. However, the claimant has not followed his providers' advice. At the hearing, claimant testified that he weighed 360 pounds and he is 6 feet 2 inches tall. Given the claimant's height and weight, the claimant has a body mass index (BMI) of 46.2, which indicates obesity. Further, the undersigned has considered the claimant's allegations of pain and accounted for them in the residual functional capacity, by limiting the claimant to a limited range of sedentary work with a sit/stand option. The medical evidence does not contain objective findings that demonstrate the claimant would be unable to perform work consistent with the residual functional capacity. Moreover, the claimant's residual functional capacity is not based upon the claimant being pain-free, but rather is based on his ability to do work activities on a sustained basis despite limitations, such as pain, from his impairments. The undersigned finds the

> claimant's allegations of disability less than fully credible given the forgoing considerations.

(Tr. 20).

The ALJ's observations and conclusions concerning Plaintiff's credibility are supported by substantial evidence and comply with the standard articulated above. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 29, 2014                                           /s/ Ellen S. Carmody
                                                                                 ELLEN S. CARMODY
                                                                                 United States Magistrate Judge